**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MODESTINE SMITH THORPE,** | : | **Civil Action No.:  2:17-cv-01187-TR** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | |
| | : | **Class and Collective Action** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GOLDEN AGE HOME CARE, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF THE SETTLEMENT AGREEMENT</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................... 1

II.     PROCEDURAL HISTORY.......................................................................... 3

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ................................ 5

        A.      The Settlement Class............................................................................ 5

        B.      Distribution Of The Gross Settlement Amount And Release Of Claims .............. 5

        C.      Notice To Potential Settlement Class Members .................................... 8

IV.     DISCUSSION ............................................................................................ 10

        A.      Applicable Legal Standard................................................................. 10

                1.      Legal Standard for Approval of FLSA Settlements................................ 10

                2.      Legal Standard for Approval of Rule 23 Class Action Settlements ......... 11

        B.      The Terms of the Proposed Settlement Are Fair and Reasonable When
                Considering the Uncertainty of Continuing To Litigate This Matter .................. 12

        C.      The Settlement Agreement Is The Product of Informed, Non-Collusive
                Negotiation And Does Not Present Any Grounds To Question Its Fairness ........ 15

        D.      The Additional Service Award To the Named Plaintiff Is Justified And Should Be
                Approved............................................................................................. 16

        E.      The Proposed Settlement Furthers the Purpose of the FLSA .............................. 17

        F.      The Court Should Provisionally Certify The Settlement Class Under Fed. R. Civ.
                P. 23 .................................................................................................... 18

                1.      The Settlement Class Is Sufficiently Numerous ...................................... 20

                2.      The Settlement Class Seeks Resolution of Common Questions............... 20

                3.      The Claims Of The Named Plaintiff Are Typical Of the Settlement Class
                        .................................................................................................. 20

                4.      Class Counsel And Plaintiff Meet The Adequacy Requirements Of The
                        Settlement Class........................................................................... 21

                5.      The Settlement Class Satisfies The Predominance And Superiority
                        Requirements of FED. R. CIV. P. 23(b)(3)................................................ 21

G.       The Proposed Notices Provide Adequate Notice To The Settlement Class
         Members And Satisfy Due Process ....................................................................... 22

H.       The Proposed Implementation Schedule .............................................................. 23

V.       CONCLUSION ............................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 19

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) .................................................... 18

*Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211
    (D. Conn. July 31, 2014) .......................................................................................................... 22

*Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745
    (D.N.J. Apr. 8, 2011) ........................................................................................................ 10, 17

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ................................................................... 18

*Brown v. TrueBlue, Inc.*, No. 10–514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013).......... 10, 17

*Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-1798, 2012 WL 1019337
    (D.N.J. Mar. 26, 2012) .............................................................................................................. 10

*Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) .................. 14

*Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176 (E.D. Pa. 2000)............................... 19

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ............... 14

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ............................................... 16

*Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012) ................................. 10

*Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–cv–0718, 2013 WL 2338496
    (M.D. Pa. May 29, 2013) ......................................................................................................... 14

*Dino v. Pa., No. 08–1493*, 2013 WL 4041681 (M.D. Pa. Aug. 8, 2013) .................................... 10

*Fry v. Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ................................................... 19, 20, 21

*Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982)................................................................. 21

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).............................................................................. 11

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)................................................ 7

*In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199 (E.D. Pa. 2014) ........................ 14

*In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718
    (E.D. Pa. Mar. 7, 2014) .................................................................................................. 10, 11, 18

*In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009) ................................... 19

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768
(3d Cir. 1995) ...................................................................................... 11, 12, 19

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224
(E.D. Pa. July 16, 2009) ................................................................................ 7, 17

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ......................................... 12

*In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) .................................. 12

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................. 15

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................................... 19

*Klingensmith v. BP Prods. N. Amer., Inc., No. 07-cv-1065*, 2008 WL 4360965
(W.D. Pa. Sept. 24, 2008) ..................................................................................... 11

*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) .......................................................... 22

*Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ......................................... 10, 11

*Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472
(M.D. Pa. Mar. 31, 2008) ...................................................................................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................ 22

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ........................................................ 15

*Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919
(M.D. Pa. May 8, 2014) ........................................................................................ 17

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001) ............ 15

*Singleton v. First Student Mgmt. LLC*, No. 13-cv-1744, 2014 WL 3865853
(D.N.J. Aug. 6, 2014) ............................................................................................ 11

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................................... 20

*UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151
(E.D. Mich. Mar. 31, 2006) .................................................................................... 15

*Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226
(S.D. Ohio June 5, 2014) ....................................................................................... 22

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956 (3d Cir. 1983) ................................. 12

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1984) ................................................................. 19

iv

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)....................................................... 18

*Young v. Tri Cnty. Sec. Agency, Inc., 13-cv-5971*, 2014 WL 1806881
   (E.D. Pa. May 7, 2014) ......................................................................................... 16, 18

## **Statutes & Regulations**

29 C.F.R. § 552.6 .......................................................................................................................... 3

29 U.S.C. § 201 .............................................................................................................................. 1

29 U.S.C. § 202 ............................................................................................................................ 18

29 U.S.C. § 216(b) ............................................................................................................... 3, 5, 18

## **Rules**

Fed. R. Civ. P. 23 ................................................................................................................. passim

Fed. R. Civ. P. 23(a) ........................................................................................................... passim

Fed. R. Civ. P. 23(b) ........................................................................................................... passim

Fed. R. Civ. P. 23(c) ........................................................................................................... 19, 22

Fed. R. Civ. P. 23(e) ........................................................................................................... 11, 12

## **Other Authorities**

2 Newberg on Class Actions § 11.41 (3d ed.1992) .................................................................... 11

Manual for Complex Litigation (Second) §30.44........................................................................ 15

Manual for Complex Litigation (Third) § 30.41 ......................................................................... 11

Manual for Complex Litigation (Third) § 30.42, at 238 (1997) .................................................. 11

Case 2:17-cv-01187-TR   Document 32-1   Filed 05/29/18   Page 7 of 30

## I.     __INTRODUCTION__

This class and collective action wage and hour lawsuit against Defendant Golden Age Home Care, Inc. ("Golden Age" or "Defendant") has been settled, and Plaintiff Modestine Smith Thorpe respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's approval. On March 17, 2017, Plaintiff Modestine Smith Thorpe filed this class and collective action, alleging that the Defendant failed to pay for all hours worked and overtime compensation, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Pennsylvania state laws. (Dkt. No. 1.) More specifically, Plaintiff alleges that she and other Home Health Aides were not properly paid for all hours worked or overtime. *Id.*

The Parties agreed to engage in an Alternative Dispute Resolution ("ADR") process. Following the exchange of substantial informal discovery, extensive arm's-length settlement negotiations, and four in-person settlement conferences in Philadelphia, Pennsylvania before experienced U.S. Magistrate Timothy R. Rice, the Parties were able to reach a class settlement of this matter.  *See* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶¶ 6-8. The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (attached hereto as Ex. 1).

The Settlement includes a gross cash payment of Seven Hundred Twenty-Five Thousand Dollars and Zero Cents ($725,000.00) (the "Gross Settlement Amount"), excluding the employer's share of applicable FICA and FUTA payroll taxes. *See* Agreement ¶ 10(l).  Every Eligible Class Member[1] will receive a Settlement Award, and none of the funds from the Gross Settlement

---

[1] Eligible Class Member means "Plaintiff and all persons who worked for Defendant as a Home

Amount will revert to Defendant. *Id.* at ¶¶ 18(d), 20. Defendant will pay the Gross Settlement Amount by July 24, 2018.  Payment of attorneys' fees and costs shall be made within three (3) business days after the Effective Date. *Id.* at ¶ 18(b).

In exchange, the Settlement Agreement contains a release of all FLSA and Pennsylvania state law wage and hour claims that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, travel time compensation, liquidated or other damages from March 17, 2014 to April 1, 2017 in weeks when the Eligible Class Member worked as Home Health Aide.  No Eligible Class Member shall be deemed to release an FLSA claim unless they cash their Settlement Award.  *See id.* at ¶ 11(b).  The releases will not become effective until the Effective Date. *Id.* at ¶ 11.

Plaintiff's counsel believes that the negotiated Settlement Agreement provides an excellent settlement for the Plaintiff and the Settlement Class, with respect to their claims for alleged unpaid wages, travel time and overtime arising from Defendant's alleged improper wage and hour practices at issue in this case.  *See* Schalman-Bergen Decl. ¶ 10.  The Gross Settlement Amount represents more than 100% of the unliquidated, unpaid overtime wages that Plaintiff calculated were owed to Settlement Class Members using a half time rate. *Id.* at ¶ 11.

Plaintiff respectfully submits that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for preliminary approval under federal law and falls well within the range of reasonableness.  Accordingly, the Plaintiff requests that the Court issue an order: 1) granting preliminary approval of the proposed Settlement Agreement; 2)

---

Health Aide in Pennsylvania and where the records indicated that the employee worked more than forty hours in one or more workweeks between March 17, 2014 and April 1, 2017, unless removed from the Settlement Class by timely opting out of the Settlement." *Id.* at ¶¶ 10(g), (v).  There are approximately 322 Settlement Class Members.

preliminarily certifying the state law claims as a Fed. R. Civ. P. 23 class on behalf of the Settlement Class and conditionally certifying the FLSA claims pursuant to 29 U.S.C. § 216(b); 3) preliminarily appointing Plaintiff Modestine Smith Thorpe as Representative of the Settlement Class; 4) preliminarily appointing Berger & Montague, P.C. as Class Counsel for the Settlement Class; 5) approving the Angeion Group as Settlement Administrator and preliminarily approving the costs of administration; 6) approving the plan of notice to the Settlement Class Members, including approving the Notice attached to the Settlement Agreement as Exhibit A; and 7) approving the proposed schedule and procedure for the final approval of this Settlement. Defendant does not oppose this Motion.

## II.   **PROCEDURAL HISTORY**

On March 17, 2017, Plaintiff Modestine Smith Thorpe ("Plaintiff") filed a class and collective action lawsuit against Golden Age in the United States District Court for the Eastern District of Pennsylvania alleging violations of the FLSA, the PMWA and Pennsylvania Common Law (unjust enrichment or *quantum meruit*). The Classes were defined as "all persons who worked for Golden Age Home Care, Inc. ("Golden Age") as a home health aide between the effective date of the U.S. Department of Labor's Home Care Finale Rule, 29 C.F.R. § 552.6 and the present ("the FLSA Class")" and "all persons who worked for Golden Age Home Care, Inc. ("Golden Age") as a home health aide in Pennsylvania between May 17, 2013 and the present (the "Pennsylvania Class")." *See* Compl. ¶¶ 12-13.

The Parties subsequently met and conferred, and agreed to engage in an alternative dispute resolution process ("ADR"). The Parties participated in four settlement conferences in Philadelphia, Pennsylvania before U.S. Magistrate Timothy R. Rice on September 13, 2017, October 30, 2017, November 16, 2017, and February 20, 2018. (Dkt. Nos. 16, 20, 21, 27.) In connection with the ADR process, the Parties agreed to execute a Protective Order and to

exchange informal discovery so that they could engage in meaningful, good faith and informed settlement discussions.   Specifically, Defendant agreed to produce and did produce available electronic and hardcopy payroll records, timesheets, as well as policy documents. Further, prior to the settlement conferences, the Parties engaged in pre-mediation meet and confer calls. In preparation for the mediation, the Parties each prepared and exchanged revised comprehensive damages analyses.

The Parties consented to jurisdiction before this Court on September 14, 2017 after the first settlement conference and rescheduled a second date for a settlement conference to provide Defendant time to perform its supplemental analysis and provide financial information in support of its inability to pay defense.  Between the September 13, 2017 settlement conference and the February 20, 2018 settlement conference, Defendant provided Plaintiff with certain financial documents for Defendant, a summary of hours, timekeeping information, and shift schedules for the Settlement Class.  During that time, the Parties also met and conferred regarding damages.

As a result of the settlement conferences and continued arm's-length negotiations between the Parties, the Parties have agreed to settle the Action in accord with the terms of the Settlement Agreement.  Accordingly, the Parties now present the Settlement Agreement to the Court for its approval.  The Settlement offers significant advantages over the continued prosecution of this case: Plaintiff and the Settlement Class will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant would assert various defenses to its liability. Schalman-Bergen Decl. ¶ 10.  The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Settlement Class are provided with notice of the Settlement Agreement and its terms.  *Id.*

III.  **THE TERMS OF THE SETTLEMENT AGREEMENT**

A.  **The Settlement Class**

The Settlement Agreement provides that the Settlement Class includes "Plaintiff and all persons who worked for Defendant as a Home Health Aide in Pennsylvania and where the records indicated that the employee worked more than forty hours in one or more workweeks between March 17, 2014 and April 1, 2017, unless removed from the Settlement Class by timely opting out of the Settlement." *See* Agreement ¶ 10(v).

The Parties have agreed that, for settlement purposes only, the requisites for establishing collective action certification pursuant to 29 U.S.C. § 216(b) have been satisfied, and the Settlement Class may be certified pursuant to Fed. R. Civ. P. 23. *Id.* at ¶ 12(a).  Notice of the settlement will be provided to the above-defined Settlement Class in the form of the proposed Settlement Notice ("Notice") attached to the Settlement Agreement as Exhibit A. *Id.* at ¶ 12(b); Ex. A.  Every Eligible Class Member will be paid a Settlement Award.  *Id.* at ¶ 21.

B.  **Distribution Of The Gross Settlement Amount And Release Of Claims**

Pursuant to the Settlement Agreement, Defendant shall pay the Gross Settlement Amount (*i.e.*, $725,000.00) to the Settlement Administrator by July 24, 2018. *Id.* at ¶ 18. Upon receipt by the Settlement Administrator, these funds shall be transferred immediately into a Qualified Settlement Fund.  *Id.*  The Qualified Settlement Fund will be administered by a Court-appointed Settlement Administrator, Angeion, an independent and highly experienced third-party claims administration company. *Id.* at ¶ 11(w).

The Gross Settlement Amount includes amounts to cover: (1) service award to Named Plaintiff Modestine Smith Thorpe in the amount of $7,500.00 for her efforts in bringing and prosecuting this matter; (2) the payment of attorneys' fees in the amount of up to one-third (1/3) of the Gross Settlement Amount ($241,666.67), which will compensate Class Counsel for all work

performed in the litigation as of the date of the Settlement Agreement, plus all work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Action, plus the payment of out-of-pocket costs incurred by Class Counsel, which currently are $1,646.24; and (4) a maximum of $22,500 for the Settlement Administrator's costs of the settlement administration. *Id.* at ¶ 18.  Class Counsel will file a separate Motion for Approval of Attorneys' Fees and Costs prior to the Court's final fairness hearing.

Pursuant to the Settlement Agreement, if the Court approves the amounts set forth above, the Net Settlement Amount would be approximately $451,687.09. Awards to Eligible Class Members will be made from the Net Settlement Amount.  Specifically, all Eligible Class Members will receive a *pro rata* share of the Net Settlement Amount based the total number of weeks that the Eligible Class Member worked for Golden Age as a Home Health Aide at any time between March 17, 2014 and April 1, 2017. *Id.* at ¶ 20.

The amount of $150 per Eligible Class Member will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Eligible Class Members so that each Eligible Class Member receives at least $150 in exchange for their release in this Settlement Agreement.  All Settlement Award determinations shall be based on Defendant's previously produced payroll and timekeeping data for Settlement Class Members. *Id.*

Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages, and accordingly, on each Settlement Award, the Settlement Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law

with respect to 50% of each Settlement Award distributed, and Defendant shall pay the employer's share of all required FICA and FUTA taxes on such amounts. *Id.* at ¶ 24. Defendant shall pay these taxes, which amounts shall be deposited into the Qualified Settlement Fund after the Settlement Awards are mailed to Eligible Class Members, in addition to the Gross Settlement Amount. *Id.* Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. *Id.*

Each Eligible Class Member's Settlement Awards will be mailed to all Eligible Class Members within thirty (30) days after the Final Approval Order, or as soon as reasonably practicable. *Id.* at ¶ 24. Checks issued by the third-party administrator shall be negotiable for one (1) year, or 90 additional days in the event a settlement check is lost, stolen, destroyed or becomes stale. *Id.* at ¶ 25. If at the conclusion of the one-year (or 90-additional day) period, there are any monies remaining in the Qualified Settlement Fund, those monies shall be paid to the Parties' agreed upon *cy pres* recipient, the Nationalities Service Center,[2] subject to the Court's approval in

---

[2] The Nationalities Service Center is a non-profit organization providing high-quality, comprehensive services to immigrants and refugees in the Philadelphia area, including legal, resettlement, health, and language services. *See* https://nscphila.org/. Courts in the Third Circuit routinely approve distributions to *cy pres* recipients, such as the Nationalities Service Center. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) ("When excess settlement funds remain after claimants have received the distribution they are entitled to under the terms of the settlement agreement, there are three principal options for distributing the remaining funds— reversion to the defendant, escheat to the state, or distribution of the funds *cy pres*. Among these options, *cy pres* distributions have benefits over the alternative choices. [ . . .] *Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions."). The objectives of the Nationalities Service Center are closely aligned with the interests of Settlement Class Members, and utilizing a *cy pres* is the best option for the remaining funds. *See, e.g.*, *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009

the Final Approval Order.  *Id.*  There will be no reversion of any portion of the Gross Settlement Amount to Defendant at any time.

In exchange for the Settlement benefits, all Class Members shall release "any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, travel time compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under the FLSA, Pennsylvania wage and hour laws, or Pennsylvania common law claims (including unjust enrichment or *quantum meruit*) from March 17, 2014 to April 1, 2017." *Id.* at ¶ 10(r). The Parties agree that only Settlement Class Members who cash their Settlement Award shall release their FLSA claims against Releasees.  *Id.* at ¶ 11(b).

In addition, in exchange for the amount approved by the Court as a service award, Named Plaintiff Modestine Smith Thorpe has agreed to a broader general release of claims than the other Eligible Class members.  *Id.* at ¶¶ 11(a), 18(a). No releases shall be effective until the Effective Date.  *Id.* at ¶ 11.

### C.   Notice To Potential Settlement Class Members

The Settlement Agreement provides what the Plaintiff believes is the fairest and most practicable procedure for notifying Settlement Class Members of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement – direct mail and electronic mail ("email"). *Id.* at ¶ 12(b). Under the terms of the Settlement Agreement, within ten (10) business days after the Court's Preliminary Approval Order, Defendant shall provide Class Counsel and the Settlement Administrator with an electronic database containing the names, last

---

WL 2137224, at *11 (E.D. Pa. July 16, 2009) (approving provision for the charitable donation of unclaimed funds that amount to less than $50,000).

known addresses, last known telephone numbers, last known email addresses (if any), and last four digits of social security numbers for Settlement Class Members.  In order to provide the best notice practicable, Class Counsel will take reasonable efforts to identify current addresses via public and proprietary systems.  *Id.* at ¶ 12(c).

Within five (5) business days after receiving the contact information from Defendant, Class Counsel or the Settlement Administrator will mail and email (if applicable) an agreed upon and Court approved Notice.  *Id.* at ¶ 12(e).  Any Notices returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail.  *Id.* at ¶ 12(f).  If any Notice is returned to Class Counsel without a forwarding address, Class Counsel shall undertake reasonable efforts such as skip traces to search for the correct address, and shall promptly re-mail the Settlement Notices to any newly found addresses.  *Id.*

Settlement Class Members shall have sixty (60) calendar days from the time the Notice is initially mailed by the Settlement Administrator to object to or opt-out of the Settlement ("Notice Deadline"). *Id.* at ¶¶ 10(n), 13-14.  Settlement Class Members who wish to object to the Settlement may do so by submitting a written statement objecting to Class Counsel and counsel for Defendant on or before the Notice Deadline. *Id.* at ¶ 13.  Additionally, Settlement Class Members who wish to exclude themselves from the Settlement ("opt out") must mail to Class Counsel or the Settlement Administrator a written statement indicating that they do not wish to participate on or before the Notice Deadline, or be bound by the Settlement.  *Id.* at ¶ 14.

Defendant may communicate about the settlement with its current employees who are Settlement Class Members for the exclusive purpose of encouraging them to participate in the Settlement and cash their settlement checks, consistent with the terms and provisions of this

Settlement Agreement. *Id.* at ¶ 12(g). Defendant will not take any adverse action against any individual because he/she is eligible to participate or does participate in the Settlement and he/she cashes the settlement check. *Id.*

## IV.   DISCUSSION

Plaintiff respectfully requests that the Court enter the accompanying proposed order preliminarily approving the collective action settlement of the FLSA claims and the class action settlement of the Rule 23 State Law Claims.  Defendant does not oppose this Motion.

### A.   Applicable Legal Standard

#### 1.   Legal Standard for Approval of FLSA Settlements

The standard for approval of an FLSA collective action requires only a determination that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *See Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-1798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011).

"Although the Third Circuit has not yet specifically addressed what factors district courts should consider in evaluating settlement agreements under the FLSA, district courts in this Circuit have referred to the considerations set forth in *Lynn's Food Stores*. *See In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (citing *Brown v. TrueBlue, Inc.*, No. 10–514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013); *Dino v. Pa.*, No. 08–1493, 2013 WL 4041681, at *4 (M.D. Pa. Aug. 8, 2013); *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012). Under *Lynn's Food Stores*, a district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that

are actually in dispute."  679 F.2d at 1354.

Because the Third Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. *See In re Chickie's & Pete's Wage & Hour Litig*, 2014 WL 911718, at *2. (citing *Girsh v. Jepson*, 521 F.2d 153, 157–58 (3d Cir. 1975)).  Once the settlement is found to be fair and reasonable, the Court also determines whether the agreement furthers the purpose of the FLSA. *See Singleton v. First Student Mgmt. LLC*, No. 13-cv-1744, 2014 WL 3865853, at *8 (D.N.J. Aug. 6, 2014).

### 2.    Legal Standard for Approval of Rule 23 Class Action Settlements

Rule 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis.  Fed. R. Civ. P. 23(e) outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified.  *See, e.g.*, MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41.

Plaintiff now seeks preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e). "The preliminary determination establishes an initial presumption of fairness." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995).  A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.* at 785 (citing 2 Newberg on Class Actions § 11.41 at 11–88 (3d ed.1992)); MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42, at 238 (1997); *see also Klingensmith v. BP Prods. N. Amer., Inc.*, No. 07-cv-1065, 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) (holding "the settlement

merits preliminary approval [as the settlement was] reached as a result of arm's-length negotiation between experienced counsel aided by an experienced mediator."); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

The standard for final approval of a settlement is that the settlement is fair, adequate and reasonable to the class. *Walsh v. Great Atl. & Pac. Tea Co., Inc*., 726 F.2d 956, 965 (3d Cir. 1983). When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *see also In re Gen. Motors Corp.*, 55 F.3d at 785 (holding that the "preliminary determination establishes an initial presumption of fairness").  That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed.  *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 638.

As set forth below, the proposed Settlement in this case falls well within the range of possible approval because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA.  As such, there are no grounds to doubt the reasonableness of the Settlement.

**B.      The Terms of the Proposed Settlement Are Fair and Reasonable When Considering the Uncertainty of Continuing To Litigate This Matter**

Here, the proposed Settlement meets both the standard for preliminary approval under Rule 23(e) as well as under the FLSA. The Gross Settlement Amount provides Settlement Class

Members with the recovery of unpaid overtime hours worked, and it was carefully negotiated based on a substantial investigation by Class Counsel, and the review and analysis of documents produced by Plaintiff and Defendant in preparation for mediation. Schalman-Bergen Decl. ¶¶ 7,11.

During the course of their extensive settlement negotiations, the Parties exchanged data regarding all Settlement Class Members, and performed and exchanged detailed damages calculations. In addition to disagreeing on whether overtime was owed under the FLSA or state law, the Parties also disagreed regarding the appropriate formula for calculating damages in the event Plaintiff prevailed on liability. Ultimately, the Settlement that the Parties reached reflects what Plaintiff's counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiff would face if the case proceeded in litigation.

More specifically, the Gross Settlement Amount is based on an analysis of workweeks that the Settlement Class Members worked for Defendant during the relevant time period, as determined by Defendant's personnel and payroll records. *Id.* at ¶ 11. The Gross Settlement Amount is a negotiated amount that falls between Defendant's calculated potential exposure and Plaintiff's calculated potential damages. The Gross Settlement Amount represents more than 100% of the unliquidated, unpaid overtime wages that Plaintiff calculated were owed to Settlement Class Members using a half time rate. *Id.* This is an excellent result for the Eligible Class Members, especially considering the risks of continued litigation. First, there was a risk that the Plaintiff would not succeed in maintaining a collective or class through trial. Second, a trial on the merits would involve significant risks for Plaintiff as to both liability and damages. *Id.* While the Plaintiff believes the case was very strong, it would require significant factual development and any verdict at trial could be delayed based on appeals by the Defendant.

In addition, the proposed allocation formula is fair and reasonable and should be

preliminarily approved. *See Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Settlement Class Members do not need to take any action in order to receive a settlement award. Under the proposed allocation formula, each Eligible Class Member will receive settlement shares based on their potential damages (*i.e.*, the number of hours above 40 worked in a given work week during the class period times half their hourly wage).  This allocation formula takes into account that Settlement Class Members had different wages and schedules, and therefore are entitled to different amounts of damages.

Where, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the class members, it is an indication that the proposed settlement is fair, reasonable, and adequate. *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources.").[3] In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

---

[3] *See also In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–cv–0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate.").

C.     **The Settlement Agreement Is The Product of Informed, Non-Collusive Negotiation And Does Not Present Any Grounds To Question Its Fairness**

It is well-established that, in determining whether a proposed settlement should be preliminarily approved, courts may consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations." *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001) (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) §30.44).   Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's-length cannot be gainsaid.   Lawyers know their strengths and they know where the bones are buried"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight"); *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case, that "the endorsement of the parties' counsel is entitled to significant weight.").

The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations. Schalman-Bergen Decl. ¶¶ 7-9.  The proposed Settlement was reached only after (1) the exchange of substantial documents and records; (2) multiple pre-settlement conference calls; (3) an in-person conference; (4) preparation and exchange of mediation statements; and (5) four in-person settlement conferences in Philadelphia, Pennsylvania, which included additional extensive arm's-length negotiations between counsel for the Parties both before and after the mediation. *Id.* at ¶¶ 6-9.  As described above, Class Counsel extensively investigated the applicable law as applied to the relevant facts discovered in this action, and the potential defenses thereto.

15

The settlement amount is based on an intensive review of the facts and law. *Id.* at ¶¶ 7-8.

Class Counsel are experienced and respected class action litigators. *See id.* at ¶¶ 2-4, Ex. A.  Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believe this Settlement will provide a substantial benefit to the Settlement Classes.  *Id.* at ¶ 10.

In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the parties.

**D.     The Additional Service Award To the Named Plaintiff Is Justified And Should Be Approved**

Pursuant to the Settlement Agreement, Defendant has agreed to pay Named Plaintiff Modestine Smith Thorpe a service award in the amount of Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) for her efforts in bringing and prosecuting this matter, and in addition, for her broader release against Defendant. *See* Settlement Agreement ¶ 19(a).  Subject to Court approval, this amount will be paid in addition to her recovery of unpaid overtime. *Id.* at ¶ 19.

 "[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted); *see also Martin v. Foster Wheeler Energy Corp.*, No. 3:06-cv-0878, 2008 WL 906472, at *8-*9 (M.D. Pa. Mar. 31, 2008) (approving incentive award for named representatives a total of $10,000.00).  It is particularly appropriate to compensate named representative plaintiffs with service awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class.  *Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971, 2014 WL 1806881, at *1, 8 (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA and PMWA, where named plaintiff released all waivable claims arising out of employment and made significant contributions to the litigation).

16

Here, the proposed additional payment is justified by the benefits that Modestine Smith Thorpe's diligent efforts have brought to the Settlement Class Members.  The Plaintiff took the significant risk of coming forward to represent the interests of her fellow employees. Schalman-Bergen Decl. ¶ 14.  She worked with Class Counsel, providing background information about her employment, about Defendant's policies and practices, and about the allegations in this lawsuit. *Id*.  She risked their reputation in the community and in her field of employment in order to participate in this case on behalf of the Class.  *Id.*

The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named plaintiff's] cooperation.  Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (approving service payments of $10,000.00 to each of eight named plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney*, 2009 WL 2137224 at *12 (approving $20,000.00 enhancement awards for each of three named plaintiffs in wage and hour settlement).

For these reasons, the service award payment of $7,500 to Modestine Smith Thorpe should be preliminarily approved as fair and reasonable.

### E.     The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *Compare Brown*, 2013 WL 5408575, at *3 (finding settlement agreement frustrated the implementation of

the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards) *with Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718, at *3 (holding that provision limiting press coverage does not frustrate the purpose of the FLSA).

Indeed, the settlement furthers the purposes of the FLSA by providing Eligible Class Members with substantial recovery for their unpaid overtime that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

**F.      The Court Should Provisionally Certify The Settlement Class Under Fed. R. Civ. P. 23[4]**

In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b).  *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975)).  A case may be certified as a class action under Rule 23 when:

    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;

---

[4] For a collective action to proceed under section 216(b) of FLSA, two requirements must be met: (1) all members of the collective action must affirmatively consent to join; and (2) all members of the collective action must be "similarly situated." *See Young*, 2014 WL 1806881, at *2.  Because the requirements of Rule 23 are more stringent than Section 216(b) of the FLSA, Plaintiff contends that she has also met the criterion for certification of the FLSA class as "similarly situated" under 29 U.S.C. § 216(b).  The Plaintiff will seek final certification of the Settlement Class for settlement purposes only in their Motion for Final Approval.

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).  These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.  *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

A party that seeks to certify a settlement class must satisfy the same requirements necessary to maintain a litigation class. *In re Gen. Motors Corp.*, 55 F.3d at 778 (discussing and approving use of settlement-only classes).  The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Pursuant to Fed. R. Civ. P. 23(c)(1), the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (*citing Collier v. Montgomery Cnty. Hous. Auth.*, 192 F.R.D. 176, 181 (E.D. Pa. 2000)).

The Plaintiff moves for preliminary certification of the Settlement Class under Fed. R. Civ. P. 23(b)(3), and requests that the Court preliminarily find that all of the requirements for class certification are satisfied for settlement purposes only. Pursuant to the terms of the Settlement

Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 with respect to the Settlement Class Members have been and are met. *See* Agreement ¶ 8.

### 1.  The Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467. The proposed Settlement Class here easily meets the numerosity requirement because approximately 322 Settlement Class Members have been identified through Defendant's payroll records.

### 2.  The Settlement Class Seeks Resolution of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the Named Plaintiff shares at least one question of fact or law with the grievances of the prospective class. *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, Plaintiff's and the Settlement Class Members' claims arise from Defendant's common pay policies and failure to pay home health aides overtime premiums. The alleged common issues include, for example: (1) whether Settlement Class Members were entitled to overtime compensation for their hours worked; (2) whether Settlement Class Members were similarly denied compensation for all hours worked; and (3) whether Defendant's policy of failing to pay any overtime compensation to Settlement Class Members violated state wage and hour laws and common law.  These sample common questions of law and fact, which Plaintiff contends apply uniformly to all members of the proposed Settlement Class, are sufficient to satisfy the commonality requirement.

### 3.  The Claims Of The Named Plaintiff Are Typical Of the Settlement Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiff's claims are reasonably coextensive with

those of absent class members, and because Plaintiff possesses the same interest and suffered the same injury as the absent class members. *See Fry*, 198 F.R.D. at 468; *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Plaintiff's claims for unpaid overtime compensation during weeks when she worked as Home Health Aides are typical of the claims of the Settlement Class.

> **4.      Class Counsel And Plaintiff Meet The Adequacy Requirements Of The Settlement Class**

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), a named plaintiff must show: 1) that the potential Named Plaintiff has the ability and the incentive to represent the claims of the class vigorously; 2) that he or she has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class. *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because Plaintiff has the same interests as the Settlement Class Members.  There is no conflict between the Plaintiff and the Settlement Class in this case, and Plaintiff's claims are in line with the claims of the class.  The Plaintiff has and will continue to aggressively and competently assert the interests of the Settlement Class, and Plaintiff's Class Counsel is skilled and experienced in wage and hour class action litigation. *See* Schalman-Bergen Decl. ¶¶ 2-4.

> **5.      The Settlement Class Satisfies The Predominance And Superiority Requirements of FED. R. CIV. P. 23(b)(3)**

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the Settlement Class satisfies the predominance requirement.  In addition, allowing the Settlement Class Members the opportunity to participate in

a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions asserting claims under state statutory wage and overtime laws paralleling the FLSA. *See Knepper v. Rite Aid Corp*., 675 F.3d 249 (3d Cir. 2012).

Accordingly, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class for settlement purposes only.

### G.    The Proposed Notices Provide Adequate Notice To The Settlement Class Members And Satisfy Due Process

The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Opt-in Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class").

Here, the proposed Notice and manner of distribution negotiated and agreed upon by the parties is "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B), and related FLSA case law. All Settlement Class Members have been identified in a class list prepared by

Defendant, and the Notice will be mailed directly to the last known address of each member (and those addresses that the Settlement Administrator is able to find using reasonable investigatory methods).  The Notice will also be emailed to Settlement Class Members whose email addresses are known.

The proposed Notice, which is attached to the Settlement Agreement as Exhibit A, is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Eligible Class Members, including the allocation formula, the scope of the release, the request for attorneys' fees and costs, and the procedures and deadlines for making a claim for a settlement award, opting out of the Settlement or submitting objections.  *See* Agreement, Ex. A.  The Notice will also be translated into and distributed in Spanish, Chinese and Vietnamese. *Id.* at ¶ 12(b).

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class or collective notice disseminated under authority of the Court, and should be approved.

### H.     The Proposed Implementation Schedule

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement.  The proposed schedule, which the Plaintiff respectfully requests that this Court approve, is as follows:

| | |
|---|---|
| Defendant to send CAFA Notice | Within ten (10) business days after submission of the Settlement Agreement to the Court |
| Defendant Provides Settlement Class Contact Information | Within ten (10) business days after the Court's Preliminary Approval Order |
| Notice Sent | Within (5) business days after Defendant provides the Settlement Class Contact Information |
| Plaintiff's Motion for Approval of Attorneys' Fees and Costs | Forty-Five (45) days after Class Counsel initially mails the Notice |
| Deadline to postmark objections or requests for exclusion ("Objection | Sixty (60) days after Class Counsel initially mails the Notice |

23

| and Exclusion Deadline") | |
|---|---|
| Plaintiff's Unopposed Motion for Final Approval | Five (5) business days prior to Final Approval Hearing |
| Final Approval Hearing | September 28, 2018 at 9:30 a.m. |

## V.    <u>CONCLUSION</u>

Based upon the foregoing reasons, the Plaintiff respectfully requests that the Court grant this Unopposed Motion for Preliminary Approval, and sign the accompanying proposed preliminary approval order.

Dated: May 29, 2018                                        Respectfully Submitted,


<u>s/ Sarah R. Schalman-Bergen</u>
Shanon J. Carson
Sarah R. Schalman-Bergen
Camille Fundora
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
cfundora@bm.net

*Attorneys for the Plaintiff and the Settlement Class*

24