# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MODESTINE SMITH THORPE,** individually and on behalf of all persons similarly situated,<br><br>            **Plaintiff,**<br><br>      v.<br><br>**GOLDEN AGE HOME CARE, INC.,**<br><br>            **Defendant.** | Civil Action No.:  2:17-cv-01187-TR<br><br>Class and Collective Action |

### DECLARATION OF SARAH R. SCHALMAN-BERGEN IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

I, Sarah-Schalman-Bergen, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted to this Court. I respectfully submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

2.      I am a Partner at Berger & Montague, P.C. ("Berger & Montague") and Lead Counsel for Plaintiff and the Settlement Class in the above-captioned litigation. Berger & Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. I have attached a copy of our Firm's resume as Exhibit A hereto. Berger & Montague currently employs approximately 63 attorneys, plus staff who represent plaintiffs in complex and class action litigation. Our firm's Employment

Department has considerable experience representing employees in class action and collective action litigation. Berger & Montague has played lead roles in major class action cases for over 45 years, resulting in recoveries totaling many billions of dollars for our firm's clients and the classes they represent.

3.  I have an extensive background in litigation on behalf of employees, and I am currently serving as lead or co-lead counsel in many employment class and collective actions in federal courts across the country, including unpaid wage cases similar to this case. This level of experience enabled Berger & Montague to undertake this matter and to successfully and efficiently prosecute these claims on behalf of Plaintiff and the Settlement Class.

4.  Practice in the narrow area of wage and hour class and collective action litigation requires skill, knowledge and experience in two distinct subsets of the law. Expertise in one does not necessarily translate into expertise in the other. Plaintiffs' counsel must have expertise in both. The issues presented in this case required more than just a general appreciation of wage and hour law and class and collective action procedure, as this area of practice is still developing.

5.  On March 17, 2017, Plaintiff Modestine Smith Thorpe filed this class and collective action, alleging that the Defendant failed to pay for all hours worked and overtime compensation, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and Pennsylvania state laws. (ECF No. 1.) More specifically, Plaintiff alleges that she and other Home Health Aides were not properly paid for all hours worked or overtime. *Id.* Plaintiff also alleged that Around the Clock did not pay Home Health Aides for time spent traveling between clients. *Id*.

6.  At the Parties' request, the Court referred the case to Magistrate Judge Timothy Rice to conduct a settlement conference. (Dkt. No. 14.) The Parties participated in four settlement

conferences in Philadelphia, Pennsylvania before U.S. Magistrate Timothy R. Rice on September 13, 2017, October 30, 2017, November 16, 2017, and February 20, 2018. (Dkt. Nos. 16, 20, 21, 27.)

7.      In connection with the ADR process, the Parties agreed to execute a Protective Order and to exchange informal discovery so that they could engage in meaningful, good faith and informed settlement discussions. Specifically, Defendant agreed to produce and did produce available electronic and hardcopy payroll records, timesheets, as well as policy documents. Further, prior to the settlement conferences, the Parties engaged in pre-mediation meet and confer calls. In preparation for the mediation, the Parties each prepared and exchanged revised comprehensive damages analyses.

8.      The Parties consented to jurisdiction before this Court on September 14, 2017 after the first settlement conference and rescheduled a second date for a settlement conference to provide Defendant time to perform its supplemental analysis and provide financial information in support of its inability to pay defense. Between the September 13, 2017 settlement conference and the February 20, 2018 settlement conference, Defendant provided Plaintiff with certain financial documents for Defendant, a summary of hours, timekeeping information, and shift schedules for the Settlement Class. During that time, the Parties also met and conferred regarding damages.

9.      As a result of the settlement conferences and continued arm's-length negotiations between the Parties, the Parties have agreed to settle the Action in accord with the terms of the Settlement Agreement.

10.     The Settlement Agreement offers significant advantages over the continued prosecution of this case: Plaintiff and the Settlement Class will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which

Defendant would assert various defenses to its liability. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Settlement Class are provided with notice of the Settlement Agreement and its terms.

11. The Gross Settlement Amount is based on an analysis of workweeks that the Settlement Class Members worked for Defendant during the relevant time period, as determined by Defendant's personnel and payroll records. The Gross Settlement Amount represents more than 100% of the calculated unpaid overtime wages owed to Settlement Class Members based on a half time rate.

12. The Net Settlement Amount of approximately $451,692.49 provides Settlement Class Members with the recovery of unpaid overtime hours worked, and it was carefully negotiated based on factual discovery, a substantial investigation by Plaintiff's counsel, and the review and analysis of documents produced by Defendant and the Plaintiff in preparation for the settlement conference.

13. All Eligible Class Members will be awarded a *pro rata* share of the Net Settlement Award based the total number of weeks that the Eligible Class Member worked for Golden Age as a Home Health Aide at any time between March 17, 2014 and April 1, 2017 (the "Class Period"). There is no claims process, and a Class Member need not take any action in order to receive a settlement award. Every Class Member who participates in this Settlement will receive a minimum payment of $150.

14. Plaintiff Modestine Smith Thorpe will receive up to $7,500.00 for bringing and prosecuting this matter and representing the interests of the Settlement Class. In this action, Ms. Thorpe took very real steps to advance the interests of the Opt-In Plaintiff and the Settlement Class in this litigation. Plaintiff took the significant risk of coming forward to represent the interests of

her fellow employees. She worked with Class Counsel, providing background information about her employment, about Defendant's policies and practices, and about the allegations in this lawsuit. She attended and participated in the settlement conference before Judge Rice. Ms. Thorpe risked her reputation in the community and in their field of employment in order to participate in this case on behalf of the Class.

15. In addition, the $7,500 payment to Plaintiff is justified because she have agreed to a broader release of her claims against Defendant.

Dated: May 29, 2018.

>/s Sarah Schalman-Bergen
>Sarah Schalman-Bergen

# Exhibit A



1622 Locust Street | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

### About Berger & Montague

Berger & Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal,* which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs side," has selected Berger & Montague in 11 out of the last fourteen years (2003-05, 2007-13, 2015-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*.

Currently, the firm consists of 59 lawyers; 18 paralegals; and an experienced support staff. Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

### History of the Firm

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 40 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger & Montague was also lead/liaison counsel in the

*Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

**Employment Law**

The Berger & Montague Employment Law group works tirelessly to safeguard the rights of employees, and devote all of their energies to helping our firm's clients achieve their goals. Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

- *Jantz v. Social Security Administration:* The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities. The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions. The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million. EEOC No. 531-2006-00276X (2015).

- *Ciamillo v. Baker Hughes, Incorporated:* The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- *Employees Committed for Justice v. Eastman Kodak Company:* The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval). A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss). No. 6:04-cv-06098 (W.D.N.Y.)).

- *Salcido v. Cargill Meat Solutions Corp.:* The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks. This is one of the largest settlements of this type of case involving a single plant in U.S. history. (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

- *Miller v. Hygrade Food Products, Inc.:* The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant. (No. 99-1087 (E.D. Pa.)).

- *Chabrier v. Wilmington Finance, Inc.:* The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages. A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class). (No. 06-4176 (E.D. Pa.)).

- *Bonnette v. Rochester Gas & Electric Co.:* The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment. (No. 07-6635 (W.D.N.Y.)).

- *Confidential.* The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Attorney Profiles

### Shanon J. Carson – Managing Shareholder

Shanon J. Carson is a Managing Shareholder of the Firm. He is the Chair of the Firm's Employment Law Department and a member of the Firm's Commercial Litigation, Consumer Protection, Employee Benefits/ERISA, and Lending Practices and Borrowers' Rights Departments. Mr. Carson has achieved the highest peer-review rating, "AV," in Martindale Hubble, and has repeatedly been singled out for honors and awards by numerous publications. In 2015, Mr. Carson was selected as one of the top 100 attorneys in Philadelphia, and as one of the top 100 attorneys in Pennsylvania, as reported by Thomson Reuters.

Mr. Carson concentrates his practice on the prosecution of class actions and collective actions on behalf of employees, consumers, borrowers, insureds, investors, and businesses. Mr. Carson regularly is selected to serve as lead counsel in class actions and other complex litigation in federal and state courts across the United States.

Mr. Carson prosecutes all types of class actions, including employment cases, wage and hour cases, ERISA cases, consumer cases, insurance cases, construction cases, product liability cases, invasion of privacy cases, and excessive fee cases, among others.

Mr. Carson also serves as counsel to The Multihull Company, Inc., an international distributor of fine yachts and catamarans.

Mr. Carson is active in non-profit and professional organizations and is available for speaking engagements concerning the U.S. civil law system, class actions and collective actions, employment law, consumer law, and other legal issues.

While in law school, Mr. Carson was senior editor of the Dickinson Law Review and clerked for a U.S. District Court Judge.

### Sarah R. Schalman-Bergen – Shareholder

Sarah R. Schalman-Bergen is a shareholder in the Antitrust and Employment Law practice groups at Berger & Montague. Her practice focuses on antitrust class action litigation, and class and collective action employment litigation. Ms. Schalman-Bergen has extensive litigation experience in both state and federal courts, including significant appellate experience.

In the Employment Law practice group, Ms. Schalman-Bergen's practice focuses on wage and hour class and collective actions, as well as class action discrimination lawsuits under state and federal law. Specifically, Ms. Schalman-Bergen has worked on all aspects of wage and hour overtime lawsuits throughout the country, representing employees whose employers do not pay them properly in different industries, including oil and gas companies, meat and poultry plants, at fast food restaurants, in white collar

jobs and in the government.

In the Antitrust practice group, Ms. Schalman-Bergen has had an active role in prosecuting complex cases, including multidistrict litigation. Ms. Schalman-Bergen was involved in representing the employees of several high tech companies who allege that the companies illegally suppressed employees' wages, and has also worked on cases involving anticompetitive practices in the pharmaceutical industry.

Ms. Schalman-Bergen has also been involved in multiple nationwide consumer class actions with a focus on consumer financial practices, representing homeowners whose mortgage loan servicers have force-placed extraordinarily high-priced insurance on them and allegedly received a kickback from the insurer in exchange.

Ms. Schalman-Bergen maintains an active pro bono practice. She serves as volunteer of counsel to the AIDS Law Project of Pennsylvania. Through her role there, Ms. Schalman-Bergen litigates HIV discrimination cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining Berger & Montague, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation. Ms. Schalman-Bergen is a graduate of Harvard Law School and Tufts University. During law school, Ms. Schalman-Bergen served as an executive editor for the Harvard Civil Rights-Civil Liberties Law Review.

**Camille Fundora – Associate**

Ms. Fundora is an Associate in the Firm's Employment Law, Consumer Protection, and Lending Practices & Borrowers' Rights practice groups. Ms. Fundora primarily focuses on wage and hour class and collective actions arising under the Fair Labor Standards Act and state laws. Ms. Fundora has served in key roles in multiple class and collective employment action settlements.

Prior to joining Berger & Montague, Ms. Fundora practiced in the litigation department at a boutique Philadelphia law firm where she represented clients in a variety of personal injury, disability, and employment discrimination matters. Ms. Fundora is a graduate of Columbia University, Barnard College and Widener University School of Law. During law school, Ms. Fundora served as the Vice President, Academic of the Student Bar Association.

Ms. Fundora is an active member of the Pennsylvania, Philadelphia and Hispanic Bar Associations.