IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MODESTINE SMITH THORPE**, individually and on behalf of all persons similarly situated, | Civil Action No.: 2:17-cv-01187-TR |
| Plaintiff, | Class and Collective Action |
| v. | |
| **GOLDEN AGE HOME CARE, INC.**, | |
| Defendant. | |

**DECLARATION OF SARAH R. SCHALMAN-BERGEN IN SUPPORT OF
PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF ATTORNEYS' FEES AND COSTS**

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1.  I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted *pro hac vice* to this Court. I respectfully submit this declaration in support of Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Costs. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

2.  I am a Shareholder of Berger & Montague, P.C. ("Berger & Montague") and Lead Counsel for Plaintiffs and the Settlement Class in the above-captioned litigation. Berger & Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. I have attached a copy of our firm's resume hereto as Exhibit 1. Berger & Montague currently employs approximately 63 attorneys, plus staff who represent plaintiffs in complex and class action litigation. Our firm's Employment Department has considerable experience representing employees in class action and collective

action litigation.  Berger & Montague has played lead roles in major class action cases for over 45 years, resulting in recoveries totaling many billions of dollars for our firm's clients and the classes they represent.

3. I have an extensive background in litigation on behalf of employees, and I am currently serving as lead or co-lead counsel in many employment class and collective actions in federal courts across the country, including unpaid wage cases similar to this case.  This level of experience enabled Berger & Montague to undertake this matter and to successfully and efficiently prosecute these claims on behalf of Plaintiff and the Settlement Class.

4. Practice in the narrow area of wage and hour class and collective action litigation requires skill, knowledge and experience in two distinct subsets of the law.  Expertise in one does not necessarily translate into expertise in the other.  Plaintiffs' counsel must have expertise in both.  The issues presented in this case required more than just a general appreciation of wage and hour law and class and collective action procedure, as this area of practice is still developing.

5. On March 17, 2017, Plaintiff Modestine Smith Thorpe filed this class and collective action, alleging that the Defendant failed to pay for all hours worked and overtime compensation, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and Pennsylvania state laws. (Dkt. No. 1.) More specifically, Plaintiff alleges that she and other Home Health Aides were not properly paid for all hours worked or overtime. *Id.*  Plaintiff also alleged that Around the Clock did not pay Home Health Aides for time spent traveling between clients. *Id*.

6. At the Parties' request, the Court referred the case to Magistrate Judge Timothy Rice to conduct a settlement conference. (Dkt. No. 14.) The Parties participated in four settlement conferences in Philadelphia, Pennsylvania before U.S. Magistrate Timothy R. Rice on September

13, 2017, October 30, 2017, November 16, 2017, and February 20, 2018. (Dkt. Nos. 16, 20, 21, 27.)

7. In connection with the ADR process, the Parties agreed to execute a Protective Order and to exchange informal discovery so that they could engage in meaningful, good faith and informed settlement discussions. Specifically, Defendant agreed to produce and did produce available electronic and hardcopy payroll records, timesheets, as well as policy documents. Further, prior to the settlement conferences, the Parties engaged in pre-mediation meet and confer calls. In preparation for the mediation, the Parties each prepared and exchanged revised comprehensive damages analyses.

8. The Parties consented to jurisdiction before this Court on September 14, 2017 after the first settlement conference and rescheduled a second date for a settlement conference to provide Defendant time to perform its supplemental analysis and provide financial information in support of its inability to pay defense. Between the September 13, 2017 settlement conference and the February 20, 2018 settlement conference, Defendant provided Plaintiff with certain financial documents for Defendant, a summary of hours, timekeeping information, and shift schedules for the Settlement Class. During that time, the Parties also met and conferred regarding damages.

9. As a result of the settlement conferences and continued arm's-length negotiations between the Parties, the Parties have agreed to settle the Action in accord with the terms of the Settlement Agreement.

10. I believe that the settlement is not only fair and reasonable and in the best interests of the Settlement Class, it is excellent. This settlement presents an extremely good recovery, as it confers a substantial benefit on members of the Settlement Class. The settlement offers significant advantages over the continued prosecution of this case: the Settlement Class will receive

significant and immediate financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendant would assert various defenses to its liability.

11. Class Counsel is responsible for calculating Settlement payments in this case. Based on the terms of the Settlement Agreement, the Gross Settlement Amount is based on an analysis of workweeks that the Settlement Class Members worked for Defendant during the relevant time period, as determined by Defendant's personnel and payroll records. The Gross Settlement Amount represents more than 100% of the calculated unpaid overtime wages owed to Settlement Class Members based on a half time rate.

12. There is no claims process, and a Settlement Class Member need not take any action in order to receive a Settlement Award. Each Settlement Eligible Class Member will receive settlement shares based on the weeks they worked more than forty hours in a workweek. Because the formula provides a share for each week the Class Member worked more than forty hours in a workweek, it is fair and reasonable.

13. Each Eligible Class Member will receive a minimum amount of $150, regardless of the number of settlement shares allocated to that Eligible Class Member.

14. The settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate. It is, I believe, in the best interests of the Settlement Class as it will yield a prompt, certain and very substantial recovery for the Settlement Class Members.

15. The Angeion Group ("Angeion") was retained as Settlement Administrator to distribute the Settlement Awards and coordinate tax administration. Angeion has agreed to perform administration duties for an amount not to exceed $22,500.00.

16. Angeion sent notice of the Settlement to 322 Settlement Class Members on June

22, 2018 in English, Spanish, Chinese, and Vietnamese via First Class Mail, and e-mail to those whose e-mail addresses were available. The Notice explained the allocation of the Gross Settlement Fund and provided instructions for objecting to or seeking exclusion from the settlement.

17. As of August 6, 2018, **_none_** of the individuals who were sent notice have submitted objections or requested exclusion from the Settlement.[1] This is a strong indication that the Settlement Class Members approve all aspects of the proposed settlement.

## BERGER & MONTAGUE'S LODESTAR

18. In my exercise of billing judgment, I have reviewed the billing records maintained in this case, and have removed hours spent by attorneys and staff at my firm if I deemed such time to be redundant or duplicative, or if it reflected less than ten hours of work by the biller. This resulted in a reduction of 12.2 hours. After the exercise of such billing judgment, as of August 6, 2018, the total number of recorded hours spent on this litigation by Berger & Montague is 214, and the lodestar amount for attorney and support staff time, based on the firm's current rates, is $88,585.50. The hourly rates shown below are the usual and customary rates charged for each individual in all of our cases. A breakdown of my firm's lodestar is reflected below:

| Name | Position | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Sarah R. Schalman-Bergen | Shareholder | 40.5 | $605.00 | $24,502.50 |
| Camille Fundora | Associate | 88.7 | $450.00 | $39,915.00 |
| Deanna Kemler | Paralegal | 84.8 | $285.00 | $24,168.00 |
| **TOTAL** | | **214.0** | | **$88,585.50** |

19. Due to the amount of privileged information contained in Berger & Montague's actual hourly billing records, those detailed records are not attached here, but can easily be provided for this Court's *in camera* review should the Court wish to review them.

---

[1] The deadline to object or exclude is August 21, 2018.

20. The hourly rates for the partners, attorneys, and professional staff are the same as would be charged in non-contingent matters and/or which have been accepted and approved in other recent class and collective action wage and hour litigation by this Court. *See Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *2 (E.D. Pa. Dec. 9, 2016) (approving Berger & Montague's hourly rates as reasonable and "within the range charged by attorneys with comparable experience levels for litigation of a similar nature.").

21. Federal courts around the country have also routinely approved Berger & Montague's rates in wage and hour class and collective action cases. *See e.g.*, *Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-259-MRH (W.D. Pa. June 17, 2016); *Dunkel v. Warrior Energy Serv., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 15, 2016); *Niver v. Specialty Oilfield Sols.*, No. 14-1599-JFC (W.D. Pa. Oct. 7, 2015); *Ciamillo v. Baker Hughes, Inc.*, No. 3:14-cv-00081-RRB (D. Alaska June 19, 2015); *Thompson v. Peak Energy Servs. USA, Inc.*, No. 13-cv-266 (W.D. Pa. Nov. 19, 2014); *Hively v. Archer Well Co., Inc. et al.*, No. 13-cv-106 (W.D. Pa. Aug. 12, 2014); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013); *Crawford v. Zenta Mortg. Servs. LLC*, No. 3:11-cv-129 (W.D.N.C. Jan. 16, 2013); *Bearden v. Precision Air Drilling Servs., Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa. Sept. 26, 2012); *Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012); *Choul v. Nebraska Beef, Ltd.*, No. 8:10-cv-308 (D. Neb. May 17, 2012).

22. The time reflected above was time actually spent, in the exercise of reasonable judgment, by the attorneys and staff involved. Class Counsel was careful not to expend unnecessary hours and not to duplicate work done by others. The time submitted herein reflects only work done on behalf of the Settlement Class Members.

23. Class Counsel have spent approximately 214 hours prosecuting this litigation since

our investigation first began. Class Counsel's current lodestar is approximately $88,858.50. The proposed attorneys' fee award of $241,666.67 represents a multiplier of 2.73 of Class Counsel's current lodestar. Class Counsel will continue to perform work on this case due to the need to communicate with Settlement Class Members, oversee the settlement process, and attend the Final Approval hearing.

24. Class Counsel assumed a very real risk in taking on this contingent fee case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery.

## **BERGER & MONTAGUE'S EXPENSES**

25. This litigation required my firm to advance costs. Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys.

26. As of August 6, 2018, my firm expended costs in the amount of $1,697.98 to prosecute this action, as follows:

| Expense | Amount |
|---|---|
| Court Fees | $475.00 |
| Computer Research | $524.15 |
| Copying | $100.45 |
| Telephone | $5.02 |
| Travel | $98.92 |
| Electronic Signature Service | $7.44 |
| Notice Translations | $480.00 |
| Postage, Delivery & Freight | $7.00 |
| **Total** | **$1,697.98** |

27. The expenses incurred pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. All of the expenses incurred were reasonable and necessary to the prosecution of this case.

## SUMMARY OF WORK PERFORMED BY BERGER & MONTAGUE

28.     I was the lead Shareholder at Berger & Montague with respect to this case. I directed the work of the other attorneys at my firm, conducted a legal analysis of the facts presented by this case and presented legal arguments to opposing counsel. In this capacity, I: 1) conducted the initial case investigation; 2) oversaw, managed, assigned and coordinated duties of a team of attorneys throughout this litigation; 3) devised and implemented strategy and participated in meetings and numerous telephone conferences with Defendant's counsel related to the litigation and settlement; 4) coordinated the review of Defendant's documents; 5) researched relevant issues for litigation; 6) reviewed the damages analyses in preparation for settlement conferences; 7) reply to correspondence in advance of the four settlement conferences; 9) assisted in directing the settlement conference that resulted in the settlement, and negotiated the details and terms of the Settlement Agreement; 10) edited the Settlement Agreement; and 11) edited a number of the briefs in this case, including Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement.

29.     Below, I provide a summary description of the work performed by each of the Berger & Montague attorneys or staff on this case who billed at least ten hours on this matter.

30.     As of August 6, 2018, an associate of our firm, Camille Fundora, billed 88.7 hours to this case. Ms. Fundora was the primary associate on this case, and researched relevant issues for litigation; reviewed documents produced by Defendant; reply correspondence in advance of the four settlement conferences; drafted the Settlement Agreement; and drafted and edited various motions and supporting documents, including Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement, and Plaintiff's Unopposed Motion for Final Approval of Attorneys' Fees and Costs.

31.     As of August 6, 2018, a paralegal of our firm, Deanna Kemler billed 84.8 hours to

this case.  Ms. Kemler prepared and calculated the damages analysis based on the data and information provided by Defendant, and attended two settlement conferences.

32. All of the work described above was reasonable and necessary to the prosecution and settlement of this case. Class Counsel collectively conducted an extensive factual investigation and engaged in significant motion practice during the prosecution of this action.  Through this comprehensive evaluation of the facts and law, Class Counsel was able to settle this case for a substantial sum.  Class Counsel achieved this result in a very timely fashion, providing members of the Settlement Class with substantial and certain relief much sooner than if this matter had been extensively litigated.

33. The settlement reached with Defendant through the ADR process, which involves complex provisions that are specific to class action litigation of wage and hour law, is a reflection of Class Counsel's experience.  Class Counsel negotiated a complicated settlement without significant disputes between the Parties.  The settlement provides members of the Settlement Class with substantial benefits without having to wait for years of drawn out litigation.  Based upon the foregoing reasons, Class Counsel respectfully requests that this motion be granted.

Dated: August 6, 2018                                                        /s Sarah R. Schalman-Bergen
                                                                             Sarah R. Schalman-Bergen

# Exhibit 1



1622 Locust Street | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

### About Berger & Montague

Berger & Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal,* which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs side," has selected Berger & Montague in 11 out of the last fourteen years (2003-05, 2007-13, 2015-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*.

Currently, the firm consists of 59 lawyers; 18 paralegals; and an experienced support staff. Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

### History of the Firm

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 40 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger & Montague was also lead/liaison counsel in the

*Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

**Employment Law**

The Berger & Montague Employment Law group works tirelessly to safeguard the rights of employees, and devote all of their energies to helping our firm's clients achieve their goals. Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

- *Jantz v. Social Security Administration:* The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities. The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions. The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million. EEOC No. 531-2006-00276X (2015).

- *Ciamillo v. Baker Hughes, Incorporated:* The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- *Employees Committed for Justice v. Eastman Kodak Company:* The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval). A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss). No. 6:04-cv-06098 (W.D.N.Y.)).

- *Salcido v. Cargill Meat Solutions Corp.:* The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during their breaks. This is one of the largest settlements of this type of case involving a single plant in U.S. history. (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

- *Miller v. Hygrade Food Products, Inc.:* The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant. (No. 99-1087 (E.D. Pa.)).

- *Chabrier v. Wilmington Finance, Inc.:* The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages. A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class). (No. 06-4176 (E.D. Pa.)).

- *Bonnette v. Rochester Gas & Electric Co.:* The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment. (No. 07-6635 (W.D.N.Y.)).

- *Confidential*.  The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Attorney Profiles

**Shanon J. Carson – Managing Shareholder**

Shanon J. Carson is a Managing Shareholder of the Firm.  He is the Chair of the Firm's Employment Law Department and a member of the Firm's Commercial Litigation, Consumer Protection, Employee Benefits/ERISA, and Lending Practices and Borrowers' Rights Departments.  Mr. Carson has achieved the highest peer-review rating, "AV," in Martindale Hubble, and has repeatedly been singled out for honors and awards by numerous publications.  In 2015, Mr. Carson was selected as one of the top 100 attorneys in Philadelphia, and as one of the top 100 attorneys in Pennsylvania, as reported by Thomson Reuters.

Mr. Carson concentrates his practice on the prosecution of class actions and collective actions on behalf of employees, consumers, borrowers, insureds, investors, and businesses.  Mr. Carson regularly is selected to serve as lead counsel in class actions and other complex litigation in federal and state courts across the United States.

Mr. Carson prosecutes all types of class actions, including employment cases, wage and hour cases, ERISA cases, consumer cases, insurance cases, construction cases, product liability cases, invasion of privacy cases, and excessive fee cases, among others.

Mr. Carson also serves as counsel to The Multihull Company, Inc., an international distributor of fine yachts and catamarans.

Mr. Carson is active in non-profit and professional organizations and is available for speaking engagements concerning the U.S. civil law system, class actions and collective actions, employment law, consumer law, and other legal issues.

While in law school, Mr. Carson was senior editor of the Dickinson Law Review and clerked for a U.S. District Court Judge.

**Sarah R. Schalman-Bergen – Shareholder**

Sarah R. Schalman-Bergen is a shareholder in the Antitrust and Employment Law practice groups at Berger & Montague.  Her practice focuses on antitrust class action litigation, and class and collective action employment litigation.  Ms. Schalman-Bergen has extensive litigation experience in both state and federal courts, including significant appellate experience.

In the Employment Law practice group, Ms. Schalman-Bergen's practice focuses on wage and hour class and collective actions, as well as class action discrimination lawsuits under state and federal law.  Specifically, Ms. Schalman-Bergen has worked on all aspects of wage and hour overtime lawsuits throughout the country, representing employees whose employers do not pay them properly in different industries, including oil and gas companies, meat and poultry plants, at fast food restaurants, in white collar

jobs and in the government.

In the Antitrust practice group, Ms. Schalman-Bergen has had an active role in prosecuting complex cases, including multidistrict litigation. Ms. Schalman-Bergen was involved in representing the employees of several high tech companies who allege that the companies illegally suppressed employees' wages, and has also worked on cases involving anticompetitive practices in the pharmaceutical industry.

Ms. Schalman-Bergen has also been involved in multiple nationwide consumer class actions with a focus on consumer financial practices, representing homeowners whose mortgage loan servicers have force-placed extraordinarily high-priced insurance on them and allegedly received a kickback from the insurer in exchange.

Ms. Schalman-Bergen maintains an active pro bono practice. She serves as volunteer of counsel to the AIDS Law Project of Pennsylvania. Through her role there, Ms. Schalman-Bergen litigates HIV discrimination cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining Berger & Montague, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation. Ms. Schalman-Bergen is a graduate of Harvard Law School and Tufts University. During law school, Ms. Schalman-Bergen served as an executive editor for the Harvard Civil Rights-Civil Liberties Law Review.

**Camille Fundora – Associate**

Ms. Fundora is an Associate in the Firm's Employment Law, Consumer Protection, and Lending Practices & Borrowers' Rights practice groups. Ms. Fundora primarily focuses on wage and hour class and collective actions arising under the Fair Labor Standards Act and state laws. Ms. Fundora has served in key roles in multiple class and collective employment action settlements.

Prior to joining Berger & Montague, Ms. Fundora practiced in the litigation department at a boutique Philadelphia law firm where she represented clients in a variety of personal injury, disability, and employment discrimination matters. Ms. Fundora is a graduate of Columbia University, Barnard College and Widener University School of Law. During law school, Ms. Fundora served as the Vice President, Academic of the Student Bar Association.

Ms. Fundora is an active member of the Pennsylvania, Philadelphia and Hispanic Bar Associations.