**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **MODESTINE SMITH THORPE,** | : | **Civil Action No.: 2:17-cv-01187-TR** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | **Class and Collective Action** |
| | : | |
| **v.** | : | |
| | : | |
| **GOLDEN AGE HOME CARE, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S UNOPPOSED MOTION FOR
<u>FINAL APPROVAL OF THE SETTLEMENT AGREEMENT</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   PROCEDURAL HISTORY.................................................................................. 3

    A.   The Notice Provisions in the Settlement Agreement have been Satisfied............. 3

    B.   Response from Class Members.......................................................................... 4

III.  DISCUSSION ................................................................................................... 5

    A.   Applicable Legal Standard for Final Approval of Class Action Settlement
        Pursuant to Fed. R. Civ. P. 23.......................................................................... 5

    B.   The Settlement Satisfies the Relevant Criterion for Approval ............................ 6

        1.   The Proposed Settlement Terms are Fair, Reasonable and Adequate in
            Relation to the Strength of Plaintiff's Case and Risks and Expense of
            Further Class Litigation in this *Bona Fide* Dispute .................................... 6

        2.   The Lawsuit is at an Appropriate Point for Settlement.............................. 8

        3.   The Opinion of Experienced Counsel Supports Approval of the
            Settlement, which Resulted from Arm's-length Negotiations by Informed
            and Experienced Counsel............................................................................ 9

        4.   The Settlement Class' Response Supports the Settlement.......................... 9

    C.   The Court Should Finally Certify the Settlement Class  Under Fed. R. Civ. P. 23
        .................................................................................................................... 10

        1.   The Settlement Class Is Sufficiently Numerous ...................................... 11

        2.   The Settlement Class Seeks Resolution of Common Questions............... 11

        3.   The Claims of the Named Plaintiff are Typical of the Settlement Class .. 12

        4.   Class Counsel and Plaintiff Meet the Adequacy Requirements of the
            Settlement Class....................................................................................... 12

        5.   The Settlement Class Satisfies the Predominance and Superiority
            Requirements of Fed. R. Civ. P. 23(b)(3) ................................................. 13

    D.   The Notice Provisions were Followed and Provided Adequate Notice to the Class
        that Satisfies Due Process ................................................................................ 13

E.      The Additional Service Awards to Named Plaintiff is Justified and Should be Approved................................................................................................. 14

IV.    CONCLUSION.......................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                                      **<u>Page(s)</u>**

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ................................................................. 10

*Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745
   (D.N.J. Apr. 8, 2011) ..................................................................................................... 14, 15

*Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) .................... 7

*Cikra v. LaMi Prods., LLC*, No. 2:15-cv-06166-WB, 2016 WL 9776077 (E.D. Pa. Nov. 10,
   2016) ............................................................................................................................... 15

*City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380 (S.D.N.Y.1972) ........................................ 6

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ............... 15

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ............................................... 14

*Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976, 2016 WL 7178338
   (E.D. Pa. Dec. 9, 2016) .............................................................................................. 12, 15

*Dominguez v. Galaxy Recycling Inc.*, No. 12-75-21 (LDW), 2017 WL 2495406
   (D.N.J. June 9, 2017) ..................................................................................................... 15

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) .................................................................. 5

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ............................................ 11, 12

*General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982) ......................................................... 12

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ........................................................................... 6

*Harshbarger v. Penn Mut. Ins. Co.*, No. 12-cv-6172, 2017 WL 6525783
   (E.D. Pa. Dec. 20, 2017) ................................................................................................ 14

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ............................................. 5

*In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009) .............................................. 10

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ............................................ 5

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224
   (E.D. Pa. July 16, 2009) .............................................................................................. 5, 16

*In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 2885924
   (E.D. Pa. July 18, 2012) ................................................................................................. 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283
 (3d Cir. 1998) ............................................................................................................ 8

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. Dec. 22, 2003) ................................. 9

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .......................................... 10

*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) ............................................................ 13

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................... 13

*Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417 (D.N.J. Sept. 13, 2016) .................................. 12

*Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919
 (M.D. Pa. May 8, 2014) ............................................................................................ 15

*Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011) ....................... 15

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ...................................................................... 11

*Tenuto v. Transworld Sys., Inc.*, No. 99-cv-4228, 2002 WL 188569
 (E.D. Pa. Jan. 31, 2002) ........................................................................................... 14

*Walsh v. Great Atlantic & Pacific Tea Co.*, 96 F.R.D. 632 (D.N.J.) ........................................... 6

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1984) ...................................................................... 10

## **Statutes & Rules**

29 U.S.C. § 201 ............................................................................................................................ 1

Fed. R. Civ. P. 23 ................................................................................................................. passim

Fed. R. Civ. P. 23(a) ........................................................................................................... passim

Fed. R. Civ. P. 23(b)(3) ....................................................................................................... passim

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................ 13

Fed. R. Civ. P. 23(e) .................................................................................................................... 5

## **Other Authorities**

CONTE & NEWBERG at §§ 8.21 ............................................................................................... 14

MANUAL FOR COMPLEX LITIG. §§ 21.311 and 21.312 ........................................................14

## I.      INTRODUCTION

This class and collective action wage and hour lawsuit against Defendant Golden Age Home Care, Inc. ("Golden Age" or "Defendant") has been settled, and Plaintiff Modestine Smith Thorpe respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Final Approval of the Settlement Agreement.  As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's approval. On March 17, 2017, Plaintiff Modestine Smith Thorpe filed this class and collective action, alleging that the Defendant failed to pay for all hours worked and overtime compensation, in violation of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and Pennsylvania state laws. (Dkt. No. 1.) More specifically, Plaintiff alleged that she and other Home Health Aides were not paid for all hours worked or overtime. *Id.*  Plaintiff also alleged that Golden Age did not pay Home Health Aides for time spent traveling between clients.  *Id.*

The Parties agreed to engage in an Alternative Dispute Resolution ("ADR") process. Following the exchange of substantial informal discovery, extensive arm's-length settlement negotiations, and four in-person settlement conferences in Philadelphia, Pennsylvania before U.S. Magistrate Timothy R. Rice, the Parties were able to reach a class settlement of this matter. The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (Dkt. No. 32-2).

The Settlement includes a gross cash payment of Seven Hundred Twenty-Five Thousand Dollars and Zero Cents ($725,000.00) (the "Gross Settlement Amount"), excluding the employer's share of FICA and FUTA payroll taxes. *See* Settlement Agreement ¶ 11(l).  Every Eligible Class Member[1] will receive a Settlement Award, and none of the funds from the Gross

---

[1] Eligible Class Member means "Plaintiff and all persons who worked for Defendant as a Home Health Aide in Pennsylvania and where the records indicated that the employee worked more than

Settlement Amount will revert to Defendant.  *Id.* ¶ 17(a)(i).  Defendant deposited the Gross Settlement Amount into an escrow account maintained by the Angeion Group (the "Settlement Administrator") pursuant to the Settlement Agreement.

In exchange, the Settlement Agreement contains a release of all FLSA and Pennsylvania state law wage and hour claims that were or could have been asserted in the Complaint based on the facts alleged for alleged unpaid wages, overtime compensation, liquidated or other damages from March 17, 2014 to April 1, 2017 in weeks when the Eligible Class Member worked as Home Health Aide.  No Eligible Class Member shall be deemed to release an FLSA claim unless they cash their Settlement Award. *Id.* ¶ 11.  The releases will not become effective until the Effective Date.

Consistent with the Order granting preliminary approval, Settlement Administrator mailed the Court-approved Notice to 322 Settlement Class Members. *See* Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶ 8.  **As of August 21, 2018, Class Counsel has received zero objections and zero requests for exclusion**. *Id.* ¶ 11.

The proposed Settlement Agreement satisfies all the criteria for final approval under federal law and is fair, reasonable and adequate.  Accordingly, Plaintiff requests that the Court issue an order:

1)  Granting final approval of the proposed Settlement Agreement;

2)  Granting final approval of the Settlement Class pursuant to Fed. R. Civ. P. 23;

3)  Finally approving Modestine Smith Thorpe as the representative of the Settlement Class, and approving a $7,500.00 service award Plaintiff for her service to the Settlement Class and in exchange for her additional released claims in favor of Defendant;

---

forty hours in one or more workweeks between March 17, 2014 and April 1, 2017, unless removed from the Settlement Class by timely opting out of the Settlement." *Id.* ¶ 11(v).  There are approximately 322 Settlement Class Members.

4) Approving Berger Montague PC as Class Counsel for the Settlement Class, and approving Plaintiff's request for attorneys' fees of $241,666.67 and costs in the amount of $1,706.88;

5) Finally approving the Angeion Group as Settlement Administrator and the costs of settlement administration not to exceed $22,500; and

6) Dismissing this class and collective action with prejudice.

Defendant does not oppose this motion, and the Plaintiff has submitted a proposed final approval order for the Court's consideration.

## II.   PROCEDURAL HISTORY

Plaintiff incorporates by reference the Procedural History and Terms of Settlement Sections, as set forth in the Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval.  (Dkt. Nos. 32-1 at 3-10.)

### A.   The Notice Provisions in the Settlement Agreement have been Satisfied

Since the Court granted preliminary approval of the Settlement Agreement on June 1, 2018, the Parties have fully complied with the notice provisions detailed in the Settlement Agreement. Settlement Agreement ¶¶ 12-15.

On June 14, 2018, Class Counsel received a mailing list from Defendant containing data for 322 Settlement Class Members ("Class List"), including Plaintiff. The Class List contained the Settlement Class Members' last known addresses, last known personal email addresses, last known telephone numbers, and the last four digits of the Social Security numbers. Schalman-Bergen Decl. ¶ 5. A draft of the Class Notice was prepared by Class Counsel and approved by the Defendant. *Id.* ¶ 6.  The Class Notice was translated into Spanish, Chinese and Vietnamese. *Id.*

On or about June 22, 2018, the mailing addresses in the Class List were run through the U.S. Postal Service's National Change of Address database for all individuals who have moved during the previous four years and filed a change of address with the U.S. Postal Service.

3

Declaration of Brian S. Devery ("Devery Decl.") ¶ 6.  On or about June 22, 2018, the Settlement Administrator mailed the Class Notice in English, Spanish, Chinese and Vietnamese to 322 Settlement Class Members contained in the Class List via First Class Mail, and e-mail to those whose e-mail addresses were available. *Id.* ¶ 7. The Class Notice advised Settlement Class Members that they could object to the settlement or submit a written request for exclusion by August 21, 2018.  Schalman-Bergen Decl. ¶ 9.

As of September 7, 2017, 17 of the 322 Notices were returned to the Settlement Administrator, which attempted by a variety of means to redeliver the Notices, resulting in a total of 2 undeliverable Notices. *See* Devery Decl. ¶¶ 9-12.

### B.  Response from Class Members

Pursuant to the terms of the Settlement Agreement, Class Counsel is responsible for receiving objections and requests for exclusion from the Settlement. Settlement Agreement ¶¶ 13-14.  **As of August 21, 2018, Class Counsel has not received any objections or requests for exclusion from the Settlement**. *See* Schalman-Bergen Decl. ¶ 11.

Pursuant to the terms of the Settlement Agreement, the Settlement Administrator shall mail settlement checks within thirty (30) days after the Final Approval Order, or as soon as reasonably practicable. The Settlement Administrator shall then provide a written certification of such payments to counsel for the Parties within five (5) business days after the mailing of the settlement awards. Settlement Agreement ¶ 24.  All Settlement Award checks shall remain valid and negotiable for one (1) year from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. All funds from checks not cashed will revert to the settlement administration fund. *Id.* ¶ 25.  Additionally, any remaining amounts after

the 180-day period will be paid to the Nationalities Service Center,[2] the *cy pres* recipient designated in the Settlement Agreement. *Id.* ¶ 26; Pl.'s Mot. for Prelim. Approval of the Settlement 7, Dkt. No. 32-1. The Settlement Administrator will also coordinate tax administration. Settlement Agreement ¶¶ 6-7. The Settlement Administrator has agreed to perform administration duties for an amount not to exceed $22,500. Schalman-Bergen Decl. ¶ 17; Settlement Agreement ¶ 18(c).

## III.   DISCUSSION

Plaintiff respectfully requests that the Court enter the accompanying proposed order finally approving the class and collective action settlement.

### A.   Applicable Legal Standard for Final Approval of Class Action Settlement Pursuant to Fed. R. Civ. P. 23

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable and adequate. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009); Fed. R. Civ. P. 23(e). Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). This discretion is conferred in recognition that "[the] evaluation of [a] proposed settlement

---

[2] The Nationalities Service Center is a non-profit organization providing high-quality, comprehensive services to immigrants and refugees in the Philadelphia area, including legal, resettlement, health, and language services. *See* https://nscphila.org/. Courts in the Third Circuit routinely approve distributions to *cy pres* recipients, such as the Nationalities Service Center. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) ("When excess settlement funds remain after claimants have received the distribution they are entitled to under the terms of the settlement agreement, there are three principal options for distributing the remaining funds— reversion to the defendant, escheat to the state, or distribution of the funds *cy pres*. Among these options, *cy pres* distributions have benefits over the alternative choices. [ . . .] *Cy pres* distributions also preserve the deterrent effect, but (at least theoretically) more closely tailor the distribution to the interests of class members, including those absent members who have not received individual distributions."). The objectives of the Nationalities Service Center are closely aligned with the interests of Settlement Class Members, and utilizing a *cy pres* is the best option for the remaining funds. *See, e.g.*, *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *11 (E.D. Pa. July 16, 2009) (approving provision for the charitable donation of unclaimed funds that amount to less than $50,000).

in this type of litigation ... requires an amalgam of delicate balancing, gross approximations and rough justice." *City of Detroit v. Grinnell Corp*., 356 F. Supp. 1380, 1385 (S.D.N.Y.1972), *aff'd in part and rev'd in part on other grounds*, 495 F.2d 448 (2d Cir. 1974). Thus, the Court considers whether the proposed settlement is within a "range of reasonableness" that experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic & Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983).

The Third Circuit has set forth nine factors to be considered when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ...

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted).

### B.     The Settlement Satisfies the Relevant Criterion for Approval

#### 1.     The Proposed Settlement Terms are Fair, Reasonable and Adequate in Relation to the Strength of Plaintiff's Case and Risks and Expense of Further Class Litigation in this *Bona Fide* Dispute

Defendant has agreed to pay a large gross settlement amount -- $725,000.00 -- in settlement of the claims of the Settlement Class. All Settlement Class Members will receive a settlement award and do not need to submit a claim form. The settlement awards are based on Plaintiff's damages analysis, which takes into account the actual hours that Settlement Class Members reported working, and the amounts actually paid to them. The Gross Settlement Amount represents more than 100% of the calculated damages for Settlement Class Members' claims, not including

interest, using a half time rate. *Id.* ¶ 15. The maximum payment to a Settlement Class Member is estimated to be $11,505.98, and the average is estimated to be $1,402.57. *Id.* ¶ 16.  Every Class Member in this Settlement will receive a minimum payment of $150. *Id.* ¶ 13; Settlement Agreement ¶ 20(a).  Moreover, the results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation.

Here, the Settlement provides for an entirely ***non-reversionary*** Net Settlement Fund. Settlement Agreement ¶ 17(a)(i). There is no claims process, and a Settlement Class Member need not take any action in order to receive a settlement award.  Specifically, all Eligible Class Members will receive a *pro rata* share of the Net Settlement based on the total potential damages for the respective Settlement Class Member when he/she worked for Defendant as a Home Health Aide between March 17, 2014 and April 1, 2017.  *See* Schalman-Bergen Decl. ¶ 14; Settlement Agreement ¶ 20(b). The proposed allocation formula is fair and reasonable and should be preliminarily approved. *See Chaverria v. New York Airport Serv., LLC*, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted).

Plaintiff believes that the Settlement is an excellent result for the members of the Settlement Class.  Defendant was prepared to vigorously defend this action by asserting a number of defenses to liability, and disputing that the claims presented were appropriate for class certification or FLSA collective action treatment.  Defendant also disputed the number of hours that the Class Members worked.  Moreover, in a class action proceeding, complex procedural issues may frequently arise, offering constant challenges to the propriety of the Class. Accordingly, the risks and costs of continued litigation are likely to be much higher than those of

a typical single party case.

Given the substantial monetary settlement that was negotiated, continuing the litigation of this case and exposing the case to those risks is not warranted. Thus, the *Girsh* factors (the complexity, expense and likely duration of the litigation; the risks of establishing liability and damages; and the range of reasonableness of the settlement fund in light of the best possible recovery given the attendant risks of litigation) strongly support final approval of this Settlement.

### 2.     The Lawsuit is at an Appropriate Point for Settlement

In this case, the proposed settlement was reached after (1) the substantial exchange of informal discovery, including electronic payroll records showing days worked and all forms of compensation received by the Plaintiff and Class Members during the relevant time period; (2) multiple pre-settlement conferences and conference calls; (3) preparation and exchange of damages analyses; and (4) four in-person settlement conferences before U.S. Magistrate Judge Timothy R. Rice, which included follow-up arm's length negotiations between counsel for the Parties. Pl.'s Mot. for Prelim. Approval of the Settlement 1, 3, 4 (Dkt. No. 32-1). There was sufficient investigation and discovery conducted in this matter to allow counsel and the Court to act intelligently concerning the settlement of the claims. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (finding class counsel's "vigorous litigation," pursuit of discovery, and use of informal discovery supported settlement).

Notably, the Parties exchanged documentation, records and information that allowed them to determine the losses that the Class Members suffered as a result of the alleged improprieties at issue in this case. Defendant produced critical payroll records that helped to inform the Parties' decision to settle. Once these documents were analyzed by the Parties, along with the other discovery provided, additional discovery would not likely have changed the outcome of the Settlement. The state of the proceedings supports final approval of the Settlement.

3.      **The Opinion of Experienced Counsel Supports Approval of the Settlement, which Resulted from Arm's-length Negotiations by Informed and Experienced Counsel**

The Settlement was the result of multiple pre-settlement conferences and four in-person settlement conferences between the Parties with the assistance of U.S. Magistrate Timothy R. Rice in Philadelphia, Pennsylvania on September 13, 2017, October 30, 2017, November 16, 2017, and February 20, 2018. (Dkt. Nos. 16, 20, 21, 27.) The participation by such neutral facilitator, and the adversarial nature of those negotiations illustrates that this case was resolved and settled only after sufficient arm's-length bargaining. Counsel for both sides are highly experienced in wage and hour class action litigation. The declaration of Class Counsel filed in support of its Motion for Approval of Attorneys' Fees and Costs (Dkt. No. 35-2) describes Class Counsel's experience in this area. These experienced wage and hour attorneys believe that this case is appropriate for settlement and that the substantial sum of $725,000.00 will provide significant relief to Plaintiff and Settlement Class Members. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. Dec. 22, 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight").

4.      **The Settlement Class' Response Supports the Settlement**

Finally, the Settlement Class Members' collective response to the Settlement overwhelmingly supports final approval, since ***zero objections and zero requests for exclusion*** to the proposed Settlement were made before the August 21, 2018 deadline. *See* Schalman-Bergen Decl. ¶ 11. This overwhelmingly positive response from the Settlement Class demonstrates the fairness and adequacy of the Settlement's terms. Nothing in the response of Class Members warrants denial of the final approval of the settlement. Given the Court's preliminary approval and the complete absence of any objections by Class Members, final approval of the settlement is

warranted.  *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993) (noting that it is generally appropriate to assume that "silence constitutes tacit consent to the agreement" in the class settlement context); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 2885924, at *18 (E.D. Pa. July 18, 2012) (holding that no objections supports final approval of settlement).

> **C.  The Court Should Finally Certify the Settlement Class
>        Under Fed. R. Civ. P. 23**

The Settlement Class should be finally certified.  A case may be certified as a class action under Fed. R. Civ. P. 23 only when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).  These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See, e.g.*, *In re Constar Int'l, Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

On June 1, 2018, the Court preliminarily certified the Settlement Class under Rule 23(b)(3) for settlement purposes (Dkt. No. 34), and Plaintiff now moves for final certification of a the

Settlement Class under Rule 23(b)(3).   Pursuant to the terms of the Settlement Agreement, Defendant has stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 with respect to the Settlement Class Members, have been and are met.   Settlement Agreement ¶ 8.

### 1.        The Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000).   The Settlement Class here meets the numerosity requirement because 322 Settlement Class Members have been identified through Defendant's payroll records.   Each of the Settlement Class Members will receive a settlement award.   Schalman-Bergen Decl. ¶ 13; Settlement Agreement ¶ 20(a).

### 2.        The Settlement Class Seeks Resolution of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the named Plaintiffs shares at least one question of fact or law with the grievances of the prospective class. *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).   Here, Plaintiff's and the Settlement Class Members' claims arise from Defendant's common pay policies. The alleged common issues include, for example: (1) whether Settlement Class Members were entitled to overtime compensation for their hours worked; (2) whether Settlement Class Members were similarly denied compensation for all hours worked; and (3) whether Defendant's policy of failing to pay any overtime compensation to Settlement Class Members violated state wage and hour laws and common law.   These sample common questions of law and fact, which Plaintiff contends apply uniformly to all members of the proposed Settlement Class, are sufficient to satisfy the commonality requirement.

### 3.    The Claims of the Named Plaintiff are Typical of the Settlement Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of approving the settlement because Plaintiff's claims are reasonably coextensive with those of absent class members, and because Plaintiff possesses the same interest and suffered the same injury as the absent class members.  *See Fry*, 198 F.R.D. at 468; *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).  Plaintiff's claims for unpaid overtime compensation during weeks when they worked as Home Health Aides are typical of the claims of the Settlement Class.

### 4.    Class Counsel and Plaintiff Meet the Adequacy Requirements of the Settlement Class

To meet the adequacy requirement of Fed. R. Civ. P. 23(a)(4), a named Plaintiff must show: 1) that he or she has the ability and incentive to represent the claims of the class vigorously; 2) has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class.  *Fry*, 198 F.R.D. at 469.

The adequacy of representation requirement is met here because the Plaintiff has the same interests as the Settlement Class Members.  There is no conflict between the Plaintiff and the Settlement Class in this case, and Plaintiff's claims are in line with the claims of the Class.  *The* Plaintiff has aggressively and competently asserted the interests of the Settlement Class, and Plaintiff's counsel is skilled and experienced in wage and hour class action litigation, as set forth in the declaration of Class Counsel submitted with this Motion. *See also Devlin v. Ferrandino & Son, Inc.*, No. 15-cv-4976, 2016 WL 7178338, at *8 (E.D. Pa. Dec. 9, 2016) (finding Berger & Montague, P.C. were highly skilled and experienced counsel); *Rivet v. Office Depot, Inc.*, 207 F. Supp. 3d 417 (D.N.J. Sept. 13, 2016) (certifying a Rule 23 class in a wage and hour case and finding that Berger & Montague, P.C. would adequately represent the class as co-lead counsel).

5.     **The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3)**

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the Settlement Class satisfies the predominance requirement.  Moreover, allowing the Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court.  It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis.  Moreover, the Third Circuit has ruled that there is no reason to preclude federal jurisdiction over class actions asserting claims under state statutory wage and overtime laws paralleling the FLSA.  *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).

 Accordingly, Plaintiff respectfully requests that the Court finally certify the Settlement Class for settlement purposes only.

D.     **The Notice Provisions were Followed and Provided Adequate Notice to the Class that Satisfies Due Process**

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Notice and manner of distribution negotiated and agreed upon by the Parties was "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B).  As described above,

the Notice provisions of the Settlement Agreement were all followed by Class Counsel. Schalman-Bergen Decl. ¶ 3; Settlement Agreement ¶¶ 12-14.  There is no claims process, and a Settlement Class Member need not take any action in order to receive a settlement award.  Schalman-Bergen ¶ 13. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIG. at §§ 21.311 and 21.312.

    **E.**    **The Additional Service Award to the Named Plaintiff is Justified and Should be Approved**

The Settlement Agreement provides that the Named Plaintiff, Ms. Thorpe, will receive a $7,500 service award for her efforts in bringing and prosecuting this matter, and in addition, for her general release of all waivable claims against Defendant arising out of her employment. Schalman-Bergen Decl. ¶ 19; Settlement Agreement ¶ 18(a).  Subject to Court approval, this amount will be paid to Plaintiff in addition to her recovery of unpaid overtime.  *Id.*

"[C]ourts routinely approve incentive awards to compensate named Plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000).  It is particularly appropriate to compensate named representative Plaintiffs with incentive awards where they have actively assisted Plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. *Tenuto v. Transworld Sys., Inc.*, No. 99-cv-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002). Service awards "reward the public service of contributing to the enforcement of mandatory laws." *Harshbarger v. Penn Mut. Ins. Co.*, No. 12-cv-6172, 2017 WL 6525783, at *6 (E.D. Pa. Dec. 20, 2017) (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011)).

Here, the proposed additional payment is justified by the benefits that Plaintiff's diligent

efforts have brought to the Settlement Class Members.  Plaintiff took the significant risk of coming forward to represent the interests of her fellow employees. Schalman-Bergen Decl. ¶ 19. She worked with Class Counsel, providing background information about her employment, about Defendant's policies and practices, and about the allegations in this lawsuit.  *Id*.  She risked her reputation in the community and in her field of employment in order to participate in this case on behalf of the Settlement Class. *Id.*; *see also Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

The additional payment requested in this case are also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g.*, *Devlin,* 2016 WL 7178338 at *11 (awarding $7,500 service award to each named plaintiff); *Dominguez v. Galaxy Recycling Inc.*, No. 12-75-21 (LDW), 2017 WL 2495406, at *9 (D.N.J. June 9, 2017) (approving service award of $10,000 to named plaintiff); *Cikra v. LaMi Prods.*, *LLC*, No. 2:15-cv-06166-WB, 2016 WL 9776077, at *2 (E.D. Pa. Nov. 10, 2016) (approving services awards up to $12,500); *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named Plaintiff's] cooperation.  Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit.");

15

*Bredbenner*, 2011 WL 1344745, at *22-24 (approving service payments of $10,000 to each of eight named Plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney*, 2009 WL 2137224, at *12 (approving $20,000 enhancement awards for each of three named Plaintiffs in wage and hour settlement).

For these reasons, the service award payment of $7,500 to Plaintiff Modestine Smith Thorpe should be finally approved as fair and reasonable.

## IV.   CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court enter a final order approving this Settlement as fair, reasonable and adequate, and dismissing this case with prejudice.

Dated: September 17, 2018                    Respectfully submitted,

                                             BERGER MONTAGUE PC


                                             s/ Sarah R. Schalman-Bergen
                                             Shanon J. Carson
                                             Sarah R. Schalman-Bergen
                                             Camille Fundora
                                             BERGER MONTAGUE PC
                                             1622 Locust Street
                                             Philadelphia, PA 19103
                                             Telephone: (215) 875-3000
                                             Facsimile: (215) 875-4604
                                             sschalman-bergen@bm.net
                                             cfundora@bm.net

                                             *Attorneys for the Plaintiff and the Settlement Class*